**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| In re:<br>FRENCH QUARTER, INC.,<br><br>EUGENE CLEVE CANEPA,<br><br>    Appellant,<br><br>vs.<br><br>JAMES A. PIEPRZYCA; UST-UNITED STATES TRUSTEE, RENO; ANGELIQUE L.M. CLARK, Trustee; VAL PETERSON; OSCAR RENTERIA, Trustee of the Renteria Family Trust,<br><br>    Appellees.<br>_____<br>JAMES A. PIEPRZYCA,<br><br>    Appellant,<br><br>vs.<br><br>EUGENE C. CANEPA; UST-UNITED STATES TRUSTEE, RENO; ANGELIQUE L.M. CLARK, Trustee; VAL PETERSON; OSCAR RENTERIA, Trustee of the Renteria Family Trust,<br><br>    Appellees. | Appeal from BK-N-07-51126-GWZ<br><br>3:11-cv-0509-ECR-CWH<br>(Lead Case)<br>3:11-cv-00560-ECR-CWH<br>(Member Case)<br><br><br><br><br><br>**Order** |

    These consolidated cases are appeals from the order of the bankruptcy court, docketed on May 31, 2011, which equitably subordinated Eugene C. Canepa ("Canepa") and James Pieprzyca's ("Pieprzyca") (collectively, "Appellants") claims and separately sanctioned them for inequitable conduct before the bankruptcy court.

The question presented by the appeal is whether the bankruptcy court erred in exercising equitable subordination against Canepa and Pieprzyca without express notice and a hearing on the issue of whether equitable subordination may apply.

## I. Factual and Procedural Background

On December 16, 2005, Canepa, an individual operating Canepa Construction and Development ("Canepa Construction") as his sole proprietorship, allegedly entered into a design and construction contract on behalf of both Canepa Construction and French Quarter (the debtor in the bankruptcy proceeding). (Mem. Dec. PER[1] 2633-34.[2]) On May 10, 2007, Canepa filed a mechanic's lien on property owned by Birdie, LLC, located at 3500 West Naples Avenue, Las Vegas, Nevada, for work, materials, or equipment furnished to Naples Polaris, LLC by Canepa Construction. (Id. at 2634.) The lien was filed as a result of contract work performed by Canepa on behalf of French Quarter. (Id.)

On August 3, 2007, French Quarter filed a voluntary petition for Chapter 11 bankruptcy. (Id.) Canepa and Pieprzyca each filed proofs of claims against the estate. (Id.) Pieprzyca was an employee of French Quarter. (Id.) Canepa's claim was for the total amount of $7,795,029.54 based on the mechanic's lien he filed on the property. (Id.) Canepa did not attach the construction contract he

---

[1] "PER" refers to Pieprzyca's Excerpts of Record. "CER" refers to Canepa's Excerpts of Record.

[2] Canepa does not contest the facts as found by the bankruptcy court relating to his conduct. Pieprzyca does contest the bankruptcy court's factual findings concerning his conduct.

2

allegedly entered into in 2005. (Id.)  Pieprzyca's claim was for monies due and owing under his employment contract in the amount of $1,250,715.19, a claim for five percent of the proceeds from the sale of the debtor. (Id.)

At the September 24, 2007 § 341 meeting of creditors, Canepa testified that he signed a contract on behalf of Canepa Construction for the work done for French Quarter. (Id.)  After the § 341 meeting, Pieprzyca contends that Canepa told him that Canepa Construction did not have a construction contract with the debtor. (Id.;PER 2082-83.)

On September 29, 2007, Pieprzyca received two emails that he provided to Canepa. (Mem. Dec. PER 2634.)  The emails both provided blank construction contracts. (Id.)  The first was an email from Kassie Dickinson which included a contract typed in Word. (PER 2089.)  The second was a contract from Rick Dickinson. (Mem. Dec. PER 2634.)

On March 29, 2008, Pieprzyca faxed a declaration to Canepa to sign confirming that Pieprzyca, pursuant to his employment contract, was entitled to five percent of the proceeds from the liquidation or sale of the debtor. (Id. at 2635.)  Canepa did not sign the declaration. (Id.)

On June 11, 2008, Canepa presented the alleged 2005 contract between Canepa Construction and French Quarter to the bankruptcy court by attaching it to his response to claim objection. (Id.)  A settlement conference was held, and the Trustee and Canepa Construction compromised by reducing Canepa's claim to $2,081,500.00. (Id.)

3

1    In mid-August, Canepa alleges that Pieprzyca called him and
2 threatened to derail the settlement unless Canepa paid Pieprzyca
3 $50,000.00. (Id.)  Canepa refused. (Id.)  On August 22, 2008,
4 Pieprzyca filed an "Amended Opposition to Motion for Order Approving
5 Trustee's Compromise of Various Claims." (Id.)  In the amended
6 opposition, Pieprzyca contends that Canepa admitted to never having
7 a construction contract in 2005. (Id.)  Pieprzyca attached the
8 email he received with the blank construction contract from Kassie
9 Dickinson, which Pieprzyca contends was modified and backdated to
10 2005 by Canepa. (Id.)  On August 26, 2008, Canepa filed a reply,
11 asserting that Pieprzyca threatened to derail the settlement if
12 Canepa did not pay him $50,000.00. (Id. at 2635-36.)

13    On August 28, 2008, the bankruptcy court approved the
14 settlement despite Pieprzyca's objection to Canepa's claim because
15 the court found that the settlement was in the best interest of all
16 creditors. (Id. at 2636.)  The bankruptcy court issued an Order to
17 Show Cause on October 2, 2008 as to the validity and veracity of the
18 declarations filed by Pieprzyca and Canepa in relation to
19 Pieprzyca's objection to Canepa's claim. (Id.)  A hearing was held
20 on the Order to Show Cause on May 14 and May 15, 2009.

21    On May 31, 2011, the bankruptcy court entered an order and
22 memorandum decision holding that Canepa and Pieprzyca's claims shall
23 be subordinated to all allowed claims in the case, and that both
24 Canepa and Pieprzyca's claims shall be reduced by $25,000.00 each,
25 or the amount of actual attorney's fees if less than $50,000.00, in
26 addition to being equitably subordinated. (PER 2646.)

4

1  Both Canepa and Pieprzyca appealed, and the cases were
2 consolidated in this Court.

## II. Jurisdiction

United States District Courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory orders described in 28 U.S.C. § 158(a)(2). A party may also, "with leave of the court," appeal from other interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3). See In re City of Desert Hot Springs, 339 F.3d 782, 787 (9th Cir. 2003) (noting that the district court must hear appeals from final decisions of the bankruptcy courts, but it is within the discretion of the district court to hear appeals of interlocutory orders).

Here, the bankruptcy court's order constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) because it represents the bankruptcy court's final resolution of the parties' rights with regard to Appellants' claims against the estate. See id. at 788 (describing the Ninth Circuit's "'pragmatic' approach to deciding whether orders in bankruptcy cases are final, 'recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'") (quoting In re Mason, 709 F.2d 1313, 1317 (9th Cir. 1983)). As such, we have jurisdiction over the appeal pursuant to section 158(a).

### III. Standard of Review

We review the bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo* and its factual findings for clear error. In re Greene, 583 F.3d 614, 618 (9th Cir. 2009). A bankruptcy court's decision regarding equitable subordination pursuant to 11 U.S.C. § 510(c) is reviewed for abuse of discretion. In re Filtercorp, Inc., 163 F.3d 570, 583 (9th Cir. 1998). An award of sanctions is reviewed for abuse of discretion. In re Deville, 361 F.3d 539, 547 (9th Cir. 2004).

### IV. Discussion

Canepa and Pieprzyca each appeal the bankruptcy court's ruling equitably subordinating their claims. While their appeals vary slightly in that Canepa is not contesting the bankruptcy court's factual findings and Pieprzyca is, we shall address both appeals together because the issue of whether the bankruptcy court erred in applying 11 U.S.C. § 510(c) without holding a hearing expressly on the issue of equitable subordination disposes of both appeals.

**A. Principles of Equitable Subordination Under Mobile Steel**

11 U.S.C. § 510(c) provides that "after notice and a hearing," a court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." The seminal case on the standard for applying equitable subordination is Matter of Mobile Steel Co., 563 F.2d 692 (5th Cir. 1977). Mobile

Steel provides that three conditions must be satisfied before the court may exercise equitable subordination:

> (i) The claimant must have engaged in some inequitable conduct.
> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
> (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

Id. at 700 (internal citations omitted). Three principles must also be kept in mind:

> a) Inequitable conduct directed against the bankrupt or its creditors may be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim.
> b) A claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct.
> c) The burden of proving all the elements of subordination is on the objectant. If the validity of the underlying claim is in issue, the claimant has the burden of providing both the amount and legitimacy of his claim. However, once that burden has been satisfied, the objectant must prove by a preponderance of the evidence that the claimant engaged in such substantial inequitable conduct to the detriment of the debtor's other creditors that subordination is warranted.

In re Pac. Exp., Inc., 69 B.R. 112, 116 (B.A.P. 9th Cir. 1986) (citing Mobile Steel, 563 F.2d at 700-01). Furthermore, "[w]here the claimant is an insider, his dealings with the debtor will be subjected to more exacting scrutiny." Id. (quoting Matter of Teltronics Servs., Inc. 29 B.R. 139, 169 (Bankr. E.D.N.Y. 1983)).

**B. The Application of the Mobile Steel Factors**

While Appellants contest the bankruptcy court's application of the Mobile Steel factors to their claims, the bankruptcy court discusses the Mobile Steel factors and finds that they were

7

satisfied in this case.[3] The court did not, however, discuss the requirement of § 510(c) that equitable subordination may only be exercised after notice and a hearing, which we shall address in a separate section.

In Canepa's case, taking the bankruptcy court's factual findings as true, we agree with the bankruptcy court that equitable subordination would be appropriate under Mobile Steel based on the evidence presented to the bankruptcy court. There can be no dispute that Canepa is an insider. He is the president of both Canepa Construction and president and sole shareholder of French Quarter. (Mem. Dec. at 6 (PER 2638).) As such, his actions must be scrutinized closely, and equitable subordination is appropriate under less egregious conduct than would be required of a non-insider. However, even were Canepa not an insider, his actions would be reprehensible. The bankruptcy court found, and Canepa does not challenge, that "no contract existed between Canepa Construction and French Quarter in 2005," and that Canepa filed a "fraudulent, back-dated contract with the bankruptcy court" in an attempt to ensure that his claim would be paid, "while taking money out of the pockets of other creditors who hold legitimate claims." (Mem. Dec.

---

[3] Appellants also argue that equitable subordination was used as a sanction in this case. Equitable subordination may not be used as a sanction or penalty. In re Westgate-Cal. Corp., 642 F.2d 1174, 1178 (9th Cir. 1981) ("The time-honored maxim that equity will not enforce a penalty adds another limitation to the subordination power."). However, the bankruptcy court is not applying equitable subordination as a sanction. The court's decision clearly holds that equitable subordination is appropriate under 11 U.S.C. § 510(c), and separately finds sanctions in the amount of $25,000.00 each, or the actual amount of attorneys' fees incurred for litigating the issue of the fraudulent contract.

at 7-8 (PER 2639-40).) Furthermore, the bankruptcy court found the "evidence overwhelming that Canepa, as President of French Quarter and Canepa Construction, created the fraudulent 2005 Contract to substantiate his claim." (Id. at 2640.) Because the court essentially found that Canepa's claim was fraudulent from the start, the court chose to equitably subordinate the claim as a result of Canepa's inequitable conduct. Our *de novo* review does not lead to a different conclusion. Canepa's conduct is indisputably the type of conduct that attempted to deprive other creditors of the fair value of their claims, and the subordination of his claim does not overreach the extent of the harm caused by that misconduct.

While the evidence concerning Pieprzyca's involvement in the fraudulent conduct is not as overwhelming, we cannot find that the bankruptcy court's factual findings were clearly erroneous. Pieprzyca testified that although he was told by Canepa that he had no contract in September 2007, Pieprzyca did not bring this fact to the attention of the court for eleven months, despite being present at the October 16, 2007 meeting of creditors at which Canepa claimed to have a written construction contract. (PER 2082-2083.) Furthermore, Pieprzyca admitted that the blank contract from which Canepa fraudulently created the backdated contract was initially emailed to him shortly after Pieprzyca's conversation with Canepa about Canepa's lack of a contract, and that Pieprzyca provided the blank contract to Canepa while suspecting that the blank contract would be used to create a fraudulent contract. (PER 2093-94.) The evidence concerning Pieprzyca's alleged extortion attempt against Canepa is weaker, but the bankruptcy court's factual findings are

entitled to deference.  In light of the testimony by Canepa and the corroborating testimony by Peterson[4], and the indisputable delay between Pieprzyca allegedly finding out about Canepa's attempt to fraudulently create a contract and notifying the court, the bankruptcy court's conclusion that Pieprzyca was "trying to confer a $50,000.00 benefit upon himself by concealing the true nature of the contract" is not clearly erroneous.  Nor does it seem to be the basis, ultimately, upon which the bankruptcy court concludes that equitable subordination is appropriate.  The bankruptcy court held that "[w]hether Pieprzyca was attempting to extort $50,000.00 from Canepa to keep the true nature of the contract concealed from the court, his conduct in waiting eleven months to unveil the truth has resulted in injury to the Debtor's other creditors and has violated the integrity of the bankruptcy process."  (PER 2641-42.)  The court also found evidence that Pieprzyca participated in Canepa's attempt to create the contract.  Because Pieprzyca admits to providing Canepa with the blank contracts while suspecting that those contracts would be used to create a fraudulent contract, the bankruptcy court's finding is not clearly erroneous.

   The appropriateness of equitable subordination is not as clear-cut in Pieprzyca's case as it is in Canepa's.  However, on the basis of the bankruptcy court's factual findings, which we defer to because on the basis of the evidence presented, those findings are

---

[4] Peterson is a general engineering contractor who invested in the Naples Polaris project.  Peterson testified that he understood there was a contract between Canepa Construction and French Quarter. (PER 1827.)  Peterson also testified that Canepa discussed Pieprzyca's alleged extortion attempt with him. (PER 1856.)

not clearly erroneous, we agree that Pieprzyca's fraudulent conduct harmed the creditors in the amount of Canepa's fraudulent claim. However, the rule that equitable subordination may only be applied "to the extent necessary to offset specific harm creditors suffered as a result" may dictate that subordinating Canepa's claim would be sufficient, and not greater than necessary, to offset the harm. In re GTI Capital Holdings, LLC, Nos. 03-07923-SSC, 03-07924-SSC, 2007 WL 2493671, at *18 (Bankr. D. Ariz. Aug. 30, 2007). Arguably, the fact that there was a partial payment to Canepa's assignee, which is partially the result of Pieprzyca's improper delay in bringing his concerns to the court, may be offset by subordinating Pieprzyca's claim. Because we remand to the bankruptcy court on the basis that notice and a hearing are required on the issue of equitable subordination, we also direct the bankruptcy court to consider the harm caused by Pieprzyca's conduct and whether subordination of his claim is also necessary and appropriate to offset that harm.

### C. Notice and a Hearing

While we agree with the bankruptcy court that equitable subordination was a proper remedy for Canepa's conduct, and may have been an appropriate remedy for Pieprzyca's, we find that the bankruptcy court's failure to give proper notice and a hearing on the issue of equitable subordination requires remanding the actions. "Because subordination under § 510 involves valid claims, the claimant has a property interest that would be modified by subordination. The notice and hearing requirement, therefore, is a basic due process protection." In re Palmdale Hills Prop., LLC, 423 B.R. 655, 667 (B.A.P. 9th Cir. 2009) (quoting 4 COLLIER ON BANKRUPTCY, ¶

510.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009)).

After receiving Pieprzyca's objection to Canepa's claim, the bankruptcy court issued an Order to Show Cause (PER 1420-21) 1) why Pieprzyca or Canepa should be referred to the United States Attorney for false testimony, false claims, extortion, and fraud; and 2) "why James Pieprzyca or Eugene C. Canepa, and any entities they control, should be subject to an appropriate remedy and/or sanction, including without limitation, compensatory damages, Federal Rule of Bankruptcy Procedure 9011 sanctions, and all of this Court's inherent powers as outlined in In re Rainbow Magazine, 77 F.3d 278, 284 (9th Cir. 1996), for misleading, or attempting to mislead, this Court or defrauding the integrity of the bankruptcy process." (Order to Show Cause, PER 1421.)  The Order to Show Cause further provided that "all of the Federal Rules of Bankruptcy Procedure for Adversary Proceedings, 7001 et. seq., shall govern this hearing." (Id.) The Trustee argues that the Order to Show Cause put Appellants on notice that equitable subordination may be applied against them, and they waived their right to argue the issue by failing to present any arguments.

Despite the broad scope of the Order to Show Cause, Appellants argue that the bankruptcy court did not provide proper notice and a hearing in accordance with § 510(c) and Federal Rule of Bankruptcy Procedure 7001 et. seq.  We agree with Appellants that the hearing held in May 2009 did not adequately give notice to the parties of the possibility of equitable subordination because the bankruptcy court limited the scope of the hearing to evidence concerning Canepa

12

and Pieprzyca's conduct relating to Canepa's construction contract, and repeatedly stated that the court would not disturb the settlement other than in the form of appropriate sanctions. For example, at a hearing held on May 7, 2009, a week before the evidentiary hearing on the Order to Show Cause, the bankruptcy court clarified that the settlement agreement controls what is to be paid, and that he would not be revisiting any of those issues. (CER 419.) The bankruptcy court further stated that he "simply want[s] to know who has or who has not told me the truth, who may have engaged in what might be conduct that should be referred to the U.S. Attorney or engaged in conduct that should be subject to sanctions." (Id.) Notably, the bankruptcy court announced that "I am not adjusting claims." (Id.) The bankruptcy court also stated that he is not dealing with Pieprzyca's claims, and did not care if Pieprzyca was entitled to five percent or nothing. (Id.) The bankruptcy court then reiterated that the "whole purpose of the order to show cause was to determine who, if anyone, Mr. Pieprzyca or Mr. Canepa, were not telling me the truth when they filed under oath, under penalty of perjury, their declarations to this Court." (Id. at 420.) The bankruptcy court also stated that the hearing would not be a motion for reconsideration of the settlement agreement, would not be a claims objection forum, and would not be a means of adjusting or modifying the obligations and the rights pursuant to the settlement agreement. (Id. at 421-22.) The bankruptcy court stated that he did not intend to adjust anybody's interest. (Id. at 423.) The bankruptcy court did, however, indicate that compensatory damages or sanctions may be an appropriate remedy for the conduct. (Id. at

425-26.)  Pre-trial statements of Canepa, Pieprzyca, and the Trustee were filed on May 7th and May 8th, and did not address the issue of equitable subordination.

At the evidentiary hearing conducted on May 14, 2009, the bankruptcy court again noted that while the language of the order to show cause may have been "somewhat ambiguous," the hearing "is not a proceeding whereby the settlement agreement will be affected.  The only potential effect upon claims would be in the role of sanctions."  (PER 1798.)  Because equitable subordination may not be used as a sanction, and because the bankruptcy court applied § 510(c) to subordinate Canepa and Pieprzyca's claims separate from the $50,000 in sanctions, we find that Appellants were not given the opportunity to set forth evidence and arguments concerning equitable subordination as is required under § 510(c).

Notwithstanding the procedural defect, we considered whether remand is necessary in this action.  There is no disputing that Canepa and Pieprzyca's conduct, as found by the bankruptcy court, was the type of conduct that could result in equitable subordination.  The bankruptcy court carefully considered the Mobile Steel factors and applied them to the evidence presented in the May 2009 hearing.  However, Canepa and Pieprzyca present argument that they were denied notice and the opportunity to present evidence concerning those Mobile Steel factors. Specifically, Canepa argues that *quantum meruit* and unjust enrichment entitle Canepa to a fee regardless of his fraudulent contract claim, and Pieprzyca argues, *inter alia*, that any harm caused by his alleged participation and

14

delay in reporting the fraudulent conduct was exceeded by the harshness of equitable subordination.

With respect to Canepa's claim of extracontractual theories of recovery for his work, we note that the bankruptcy court found, based on credible evidence, and Canepa does not contest, that no agreement concerning a fee ever existed. However, this conclusion does not rule out the possibility of recovery under *quantum meruit* or unjust enrichment. Based on the evidence before us, we cannot determine whether such an argument has any merit whatsoever. But because Canepa has argued that the bankruptcy court's failure to provide notice and a hearing as required by § 510(c) deprived him of the opportunity to make the argument, we cannot find that the procedural defect was harmless.

Similarly, Pieprzyca has at least a credible argument, as we noted in the previous section, that the bankruptcy court did not adequately balance the harm he caused with the remedy of subordinating his claim. Therefore, the bankruptcy court erred in failing to provide Pieprzyca with an opportunity to argue the appropriateness of equitable subordination, and the action must be remanded.

**D. Miscellaneous Arguments**

We disagree with Canepa and Pieprzyca's suggestion that a bankruptcy court may not *sua sponte* raise equitable subordination as a remedy. In re Pac. Express, Inc. does not hold that a court may not *sua sponte* equitably subordinate a claim. 69 B.R. 112 (B.A.P. 9th Cir. 1986). In that case, the court found that there was no evidence of inequitable conduct, and therefore the court erred in

15

equitably subordinating the claims. Id. at 117-18. "[A] bankruptcy court has the duty, as well as the power, to examine the circumstances surrounding a claim to see that injustice and unfairness are not done when allowance of the claim will accrue to the benefit of a controlling stockholder with fiduciary obligations to a corporation." M.H. Gordon & Son, Inc. v. Debtor, 62 B.R. 552, 554 (D. Mass. 1986). Therefore, a bankruptcy court may have to raise the issue of equitable subordination if a party in interest has failed to do so. Id. Nothing in the Bankruptcy Code prohibits the bankruptcy court from raising the issue, as long as equitable subordination is only applied after notice and a hearing and consideration of applicable principles. The Bankruptcy Code specifically provides that:

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Nor do we find that the court erred because the hearing was not conducted as an adversary proceeding as outlined in Federal Rule of Bankruptcy Procedure 7001 *et seq*. While some cases do hold that a hearing on equitable subordination must proceed in the form of an adversary hearing, we do not believe that anything in the Code or the Rules prohibits the court from raising equitable subordination itself as long as the parties are given notice and a hearing and adequate procedural protections. See, e.g., In re Graves, 279 B.R.

266, 274 (B.A.P. 9th Cir. 2002) (when a bankruptcy court sua sponte raises a matter that ordinarily requires an adversary proceeding, it must assure that the defendant is afforded the procedural protections that inhere in an adversary proceeding).  As such, the filing of a complaint by a party in interest is not required when the bankruptcy court raises the issue of equitable subordination.

    Nor do we find merit in Appellants' argument that the bankruptcy court's order was necessarily a reconsideration of the Settlement Order and was improper because it was not conducted according to Federal Rule of Civil Procedure 60.  While equitable subordination certainly disturbs the amount Appellants will recover from the bankruptcy estate, as long as the bankruptcy court follows the necessary procedures for exercising equitable subordination, we find that the facts of this case amply demonstrate the appropriateness of such a remedy.

### V. Conclusion

    **IT IS, THEREFORE, HEREBY ORDERED** that the cases are remanded to the bankruptcy court to hold a hearing on the issue of equitable subordination to determine whether the previous order of the bankruptcy court should be followed, amended, or replaced.

    The Clerk shall enter judgment accordingly.

DATED: March 30, 2012.

*Edward C. Reed*
UNITED STATES DISTRICT JUDGE